IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 4th STREET INVESTORS LLC, )<br>LEWIS A. SCHULL, JR., GREGORY T. )<br>and SUSAN M. HEBRANK, )<br>PETER R. CAMERON, STUART H. and )<br>SUSAN L. KESSLER, RALPH ARTUSO, )<br>ROBERT W. FIDEL, RICHARD L. WAGNER, )<br>ROBERT S. and SANDRA S. HILLMAN, )<br>MYLES D. SAMPSON, GREGG L. and KIM ANN)<br>GOLDSTRON, LAUREL HIGHLANDS )<br>RADIOLOGY ONCOLOGY PENSION, )<br>ARNOLD N. and JACKLYN WAGNER, )<br>MARC A. and JOANNE GOLDBERG, )<br>EDWIN A. and DORIS THANER, )<br>JOY T. EDWARDS, TERRY L. and SALLY A. )<br>EVANS, RONALD P. MCGLADE, )<br>RONALD L. CLAWSON, GAIL R. and JAMES R. )<br>TITUS, DANIEL W. AMIDON, )<br>WILLIAM SITTING, CHRISTOPHER C. )<br>SHEEDY, FAMILY PARTNERSHIP, LP, )<br>TNG L.P., LLC, trading and doing business as )<br>BP INVESTMENT PARTNERS II, LP, )<br>BERKOWITZ PIERCHALSKI, INC., )<br>)<br>               Plaintiffs, )<br>)<br>     v. )<br>)<br>JAMES DOWDELL, )<br>)<br>               Defendant, )<br>)<br>     v. )<br>)<br>FEDERAL INSURANCE COMPANY, )<br>)<br>               Garnishee. ) | Civil Action 06-536<br><br>Judge Conti<br>Magistrate Judge Hay |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

The Plaintiffs contend that in order to satisfy a judgment entered against James Dowdell ("Dowdell") and SafeDrive Technologies, Inc. ("SafeDrive") in September 2005 by the Court of

Common Pleas of Allegheny County, they are entitled to garnish the proceeds of a Directors and Officers' Liability Policy ("the Policy" or "D&O Policy") issued to Dowdell and SafeDrive by Federal Insurance Company ("Federal"). Federal denies coverage on the ground that Dowdell did not comply with the terms of the Policy because he failed to report a claim made against him. Pursuant to a Stipulated Order (Doc. 24 ), Federal filed a Motion for Summary Judgment (Doc. 25 ) limited to two issues: (1) whether the reporting requirements of the Policy were satisfied; and (2) whether a "claim" as defined by the Policy was made while the Policy was in effect. It is respectfully recommended that the pending Motion be granted based on a negative finding as to issue one. The court's disposition of the first issue obviates the need to consider the second.

## II. REPORT

### A. BACKGROUND

In July 1999, Dowdell founded and became Chief Executive Officer of SafeDrive, a driver's education curriculum which he planned to market to Pittsburgh area high schools. This program differed from other driving courses by focusing on interactive computer-based learning and simulated vehicle training. SafeDrive's commercial operation began at Mt. Lebanon High School in January 2002, but was not profitable. Through an intermediary, Dowdell explored with Berkowitz Perchalski, Inc. ("BPI") its willingness to recruit investors in SafeDrive. Dowdell allegedly stated that with a million dollar infusion of cash, SafeDrive would show a positive cash flow by the end of the first quarter in 2003.

BPI agreed to act as the exclusive agent for SafeDrive in securing a private placement of company shares, and was able to raise over one million dollars from its clients and other individual investors. These investors became limited partners, doing business as BP Investment Partners II ("BPII"). 4th Street Investors, LLC, an enterprise affiliated with BPI, became the general partner of BPII. Even with this investment, SafeDrive was unable to show a profit.

Most of the funds raised were used to amortize debt, leaving too little cash for additional equipment. When SafeDrive filed for bankruptcy protection in September 2003, its stock was virtually worthless.

On November 10, 2003, Federal, the issuer of D & O Forefront Portfolio Policy No. 8170-4966 (Doc. 27-9), which covered SafeDrive for the period from 12:01 a.m. on November 11, 2002 to 12:01 a.m. November 11, 2003, received a letter, dated November 7, 2003, from the Plaintiffs' counsel. The letter stated:

> Please be advised that BP Investment Partners II, LP and Berkowitz Pierchalski, Inc., hereby assert a claim against SafeDrive Technologies and its Chief Executive Officer, James Dowdell, based on certain misrepresentations, acts and omissions made by Mr. Dowdell in his capacity as an officer of the company. This letter should be considered notice of a claim against the insured under the Directors & Officers Liability Coverage Section of the above-referenced policy. A copy of our clients' Complaint will be sent under separate cover.

(Doc. 27-13). . . . ." On November 11, 2003, Federal received a second letter from Plaintiffs' counsel, dated November 10, 2003. (Doc. 27-15). Enclosed with the letter was a draft complaint that Plaintiffs' counsel planned to file against Dowdell. Partly due to Federal's error in numbering the relevant Policy, Federal was unable to make immediate contact with Dowdell. When he was located, Dowdell did not answer correspondence, or return Federal's phone calls. He did not assert a claim, or communicate with Federal regarding coverage under the D & O Policy.

One month later, the Plaintiffs filed suit against Dowdell in the Court of Common Pleas of Allegheny County, alleging fraud and negligent misrepresentation in connection with the solicitation of capital for SafeDrive.(Doc. 27-3). Dowdell did not contact Federal, but hired counsel who responded to the suit by asserting that BPI was jointly and severally liable on the Plaintiffs' causes of action. (Doc. 27-5).

Because of a client conflict, counsel for Dowdell filed a Motion to Withdraw, which was granted. Dowdell elected to proceed pro se, again failing to contact Federal. On May 25, 2005, the Plaintiffs filed a Motion for Summary Judgment, which Dowdell did not oppose . The uncontested Motion was granted on September 5, 2005, and Judgment was entered in favor of the Plaintiffs in the amount of $1,084, 687.50. (Doc. 27-8). Six months later, the Plaintiffs filed Interrogatories to Federal as garnishee, seeking to recover the proceeds of the D & O policy. (Doc. 27-3). On April 23, 2006, Federal, asserting diversity jurisdiction, removed the garnishment proceedings to this court. It filed Answers, Affirmative Defenses, and a Counterclaim for a Declaratory Judgment contesting its liability under the Policy. With the consent of the Plaintiffs and the court, limited discovery took place, and Federal filed the pending Motion for Summary Judgment. To date, Dowdell has not provided notice of or made a claim of any sort under the Federal policy.

### B. STANDARD OF REVIEW

Summary judgment is appropriate only where the depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact. There must be enough evidence with respect to an issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In analyzing the record, the court must view the facts in the light most favorable to the Plaintiffs and draw all reasonable inferences in their favor. McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 847 (3d Cir. 1996).

### C. THE MERITS OF THE MOTION

#### 1. Were the Policy's Reporting Requirements Satisfied?

##### a. General Principles of Contract Construction

Federal contends that it is entitled to summary judgment because its insured failed to satisfy a condition precedent to coverage by not reporting a claim. Federal also contends that it did not receive a third-party claim during the effective dates of the Policy. The court evaluates the first of these issues - which seems straightforward, but is deceptively complex - against the background of well established contract principles. Under Pennsylvania law - which the parties agree is applicable - interpretation of an insurance contract is a question of law. The court must, therefore, determine the parameters of the Policy's coverage. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.1997); Butterfield v. Giuntoli, 670 A.2d 646, 651 (Pa. Super.1995). Though the insured bears the burden of establishing coverage, the insurer carries the burden with respect to exclusions or policy limitations. Koppers Co., Inc. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996). Policy exceptions are narrowly construed, while coverage clauses are interpreted broadly. Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n. 7 (3d Cir. 2002). Ambiguous policy provisions are also construed in favor of the insured . Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa.1983). Id. A provision must be evaluated with reference to the facts, and is ambiguous only if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa.1999) (internal citation and quotation omitted). Clear policy provisions are to be given effect as written. Tran v. Metro. Life Ins. Co., 408 F.3d 130 (3d Cir. 2005).

### b. Classifying the Policy

An insurer's liability as garnishee is based on the insurer's breach of the insurance contract with the insured. Ryan v. Furey, 262 A.2d 305 ( Pa. 1969). Federal argues that it cannot be liable to the Plaintiffs because its obligation to Dowdell was never triggered. The terms of the Policy specified that written notice of a claim *from the insured* constituted an express condition

precedent to coverage. Federal contends that the only information it received regarding Dowdell's Policy was not, in fact, a claim, and was not provided by Dowdell. According to Federal, the notice provisions in the Policy issued to Dowdell are to be strictly construed, thus relieving Federal of liability.

At the outset, the court notes that the precise constellation of facts presented here has yet to be addressed by Pennsylvania courts, or, for that matter, in reported decisions from any other jurisdiction. This does not, however, leave the court without relevant legal guideposts. When the effect of an insured's failure to comply with the notice requirements of a policy is at issue, the court must first address the Policy's terms. Strict construction of a policy's notice requirements is demanded in some instances, while substantial compliance is sufficient in others.

The case law draws a broad distinction between "claims-made" and "occurrence-based" policies and the rules governing the interpretation of each. While the terms of claims-made policies are subject to strict interpretation, courts have been willing to read occurrence-based policies more broadly. This difference stems from the nature of the coverage provided by each.

> In the "occurrence" policy, the peril insured is the occurrence itself. Once the occurrence takes place, coverage attaches even though the claim may not be for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

Am. Cas. Co. of Reading, Pa v. Continisio, 17 F. 3d 62, 68 (3d Cir. 1994) (quoting Zuckerman v. Nat'l Union Fire Ins. Co., 495 A.2d 395, 398 (N.J. 1985)). The significance of a reporting provision is also different in each type of policy. In an occurrence-based policy, notice provisions are written to aid the insurer in investigating, settling, and defending claims. Notice provisions "do not define coverage and should be liberally and practically construed." Id. In a claims-made policy, however, notice clauses serve a different function, "providing a certain date

6

after which an insurer knows that it no longer is liable under the policy, and accordingly, allow[ing] the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." City of Harrisburg v. Int'l Surplus Lines Ins. Co., 596 F. Supp 954, 962 ( M.D. Pa. 1984). "[T]he notice provisions of such a policy should be strictly construed." American Cas. Co. at 69 (quoting FDIC v. Barham, 995 F.2d 600, 604 n.9 (5th Cir. 1993) (applying Louisiana law)). See also Pizzini v. Am. Int'l Specialty Lines, Inc., 210 F. Supp. 2d 658, 668 (E.D. Pa. 2002) (holding that under Pennsylvania law, notice provisions of claims-made policies are strictly construed).

The different treatment of notice requirements in the two broad categories of policies is illustrated most often where the insured's submission of required information is untimely. As a general rule, insurance companies cannot invoke late notice to bar coverage unless they are able to demonstrate prejudice. This notice-prejudice rule is applied regularly in the case of occurrence-based policies. See, e.g., Brakeman v. Potomac Insurance Co., 371 A. 2d 193 (1977). The majority rule is, however, that prejudice need not be shown in order to limit liability under a claims-made policy. This is because:

> As courts have recognized, a "claims made" insurance policy represents a distinct bargained-for exchange between insurer and insured. An insurer obtains the benefit of a clear and certain cut-off date for coverage. In return, the insured typically pays a lower premium.

Pizzini, at 668 (citing Employers Reins. Corp. v. Sarris, 746 F. Supp. 560, 564 (E.D. Pa.1990)). Allowing reporting to be delayed until after expiration of a claims-made policy would obliterate the distinction between claims-made and occurrence-based policies. It would be "tantamount to [awarding] coverage to the insured gratis, something for which the insurer has not bargained," in effect "rewriting the contract between the two parties." City of Harrisburg, 596 F. Supp. at 961

(quoting Gulf Ins. Co. v. Dolan, Fertig and Curtis, 433 So. 2d 512, 515-16 (Fla. 1983)). Thus, lack of notice or late notice under a claims-made policy precludes coverage.

Most courts have strictly applied notice provisions in claims-made policies, and have applied the notice-prejudice rule only where coverage is occurrence-based. The Pennsylvania Supreme Court has yet to consider the notice-prejudice rule in the context of a claims-made policy, but other courts have predicted that the Supreme Court would limit the rule to occurrence-based agreements. In Pizzini, for example, the court wrote :

> In the absence of controlling Pennsylvania authority, the weight of existing case law leads [the court] to conclude, as have the courts in this circuit, that under Pennsylvania law the . . . "notice-prejudice rule does not apply to "claims made" policies. Thus, an insurer providing liability coverage under a "claims made" policy need not show it was prejudiced by an insured's failure to provide timely notice of a claim in order to deny coverage on that ground.

210 F. Supp.2d at 669-70. The court also noted : "Other state . . . and federal courts . . . have declined to adopt a "notice prejudice" rule for "claims made" policies." Id. at 669 (collecting cases).[1] See also Westport Ins. Corp. v Mirsky, Civ. A. 00-4367, 2002 WL 31018554 at * 11 (E.D. Pa. Sept.10, 2002) (holding that "under Pennsylvania law, the 'notice-prejudice' rule does not apply to 'claims made' policies") (citing Pizzini, 210 F. Supp 2d at 69-70; Cohen & Co., Inc. v. N. River Ins. Co., No. 93-1860, 1994 WL 105561 at *2 (E.D. Pa. March 29, 1994); Employers Reinsurance Corp., 746 F. Supp. at 565; City of Harrisburg, 596 F. Supp. at 962). Where a claims-based policy is at issue, then, the majority rule is that the insurer need not demonstrate

---

[1] The court in Pizzini stated that it had located only "two cases in which courts have extended a 'notice-prejudice' rule to 'claims made' policies. See Lexington v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999) (applying Wisconsin law); Sherlock v. Perry, 605 F. Supp. 1001 (E.D. Mi. 1985) (applying Michigan law)." 210 F. Supp. 2d at 669. The court in Pizzini noted, however, that both states had statutes requiring that liability policies include a provision that failure to give notice as required by the policy does not preclude liability unless the insurer is able to show prejudice. Id.

8

prejudice in order to deny coverage based on lack of notice. This rule, however, does not precisely cover the situation presented by the first prong of Federal's Motion for Summary Judgment.

### c. Should the Reporting Provisions of this Claims-Made Policy be Strictly Construed?

Federal's primary argument is not based on late notice by the insured, but on the *absence* of notice. Federal asks the court to find that the Policy is of the claims-made variety and that its reporting provisions must be strictly construed. In maintaining that it has a contractual right to insist on timely notice, and the form and source of the notice as well, Federal directs the court's attention to the following Policy provisions:

> **DECLARATIONS**
>
> **THE LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY EXTENDED REPORTING PERIOD . . . .**
>
> **VII. REPORTING**
>
> (A)  Solely with respect to any **Liability Coverage Section**:
>    (1)  Any **Insured** shall, as a condition precedent to exercising their [sic] rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**.
>
>    (2)  If during the **Policy Period** or any applicable Extended Reporting Period an insured becomes aware of a **Potential Employment Claim** or **Potential Third Party which could give rise to any Employment Claim** Or **Third Party Claim** . . . and gives written notice of such **Potential Employment Claim**, **Potential Third Party Claim** or circumstances to the Company as soon as practicable thereafter but before the expiration or cancellation of this Policy, then any Claim subsequently arising from such Employment Claim or Third Party Claim or circumstances Shall be considered to have been made against the **Insured** during the **Policy Year** in which the [**Claims or** circumstances]

> were first reported to the company.
>
> (3) All **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Company** such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim**, **Potential Employment Claim**, **Potential**, [sic] **Third Party Claim** or circumstances, the nature of the alleged **Wrongful Act,** the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, **Potential Employment Claim**, **Potential Third Party Claim** or circumstances.

(Doc. 27-9 at 10).

It is clear to the court that this Policy requires that two things happen before an insured can be covered. First, a claim must be made during the policy period. Second, the insured must provide Federal with written notice of that claim and its particulars. If either of these requisites is missing, the insurer is entitled to deny coverage. In order to avoid the legal ramifications of the fact that the insured failed to comply with the Policy's specific reporting provisions, the Plaintiffs attempt to read them out of the document: "The plain language of the Policy clearly demonstrates that notice of a claim is not necessary in order to trigger coverage . . . . ." (Doc. 28 at 4). To support this argument, the Plaintiffs point to a distinction drawn in the case law primarily over the last decade. Some cases distinguish between pure claims-made policies and policies termed "claims-made-and-reported."[2] In order to avoid the preclusive effect of Dowdell's failure to comply with the Policy's terms, the Plaintiffs insist that restrictive rules

---

[2]Under a claims-made policy, coverage is established once a claim is made within the policy period. In contrast, under a claims-made-and-reported policy, in order to establish coverage, the insured is required to report the claim to the insurer within the policy period, or within a specified time after learning of the claim. Jones v. Lexington Manor Nursing Ctr., 480 F. Supp.2d 865, 869 (S.D. Miss.2006). Not all courts recognizing the distinction have found it to be significant. Id. (remarking that many courts do not distinguish between claims-made and claims-made-and-reported policies, although there is a difference.). See also E. Texas Med. Ctr. Reg'l Healthcare Sys., v. Lexington Ins. Co., No. 6:04-CV–165, 2007 WL 2048660 at * 8 (E.D. Tex. July 12, 2007) (refusing to recognize a difference between claims- made and claims-made-and-reported policies for purposes of applying the notice-prejudice rule).

regarding notice and rejection of the notice prejudice rule have developed in cases that, in reality, involved claims-made-and-reported policies - not those written on a pure claims-made basis. The Plaintiffs ask that the court treat the contract here as a pure claims-made policy. In making this argument, the Plaintiffs ask the court to focus on the language appearing on the Declarations Page and on the first page of the Policy's Directors and Officers' Liability Section:

> THE LIABILITY COVERAGE SECTIONS (WHICHEVER )
> ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE
> WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE
> DURING THE "POLICY PERIOD" OR TO ANY EXTENDED
> REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY
> DAMAGES OR SETTLEMENTS WILL BE REDUCED AND
> MAY BE EXHAUSTED UNLESS OTHERWISE PROVIDED
> HEREIN, BY "DEFENSE COSTS", AND DEFENSE COSTS
> WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.
> READ THE ENTIRE POLICY CAREFULLY.

(Doc. 27-9 at 19).  The Plaintiffs argue that these provisions are significant because, although they refer to "claims made coverage," neither "contains any mention of a reporting requirement." (Doc. 28 at 5).  They also point to the absence of a specific reporting requirement in the Insuring Clauses of the D& O Liability Coverage Section : "These insuring agreements do not contain notice or reporting requirements.  Furthermore, nowhere in the Policy is it stated that "a 'claim' is 'made' only when reported to the insurer." Id. at 6.  The Plaintiffs ask the court to adopt their position that where a claim made falls within the effective dates of the Policy, the reporting requirements are irrelevant; all that needs to be done in order to establish coverage has been done.

To hold otherwise would, they say, violate four fundamental principles governing the interpretation of insurance contracts: (1) insurance policies must be read in their entirety, giving words their plain and proper meaning, Anglo-American Ins. Co. v. Molin, 673 A.2d 986 (Commw. Ct. 1986), rev'd on other grounds, 691 A.2d 929, (Pa. 1997); (2) words of common

11

usage must be construed in their "natural, plain, and ordinary sense," Madison Const. Co. 735 A.2d at 108; (3) the insurance company bears of the burden of establishing affirmative defenses, id.; and (4) limitations on the scope of coverage are to be construed strictly against the insurance company. Frish v. State Farm Fire & Cas. Co., 275 A.2d 849, 851 (Pa. Super. 1971).

The court has reviewed the Policy in its entirety, and is convinced that ignoring its Reporting Requirements does greater damage to fundamental contract principles than reading them as integral to the contract as a whole. The Terms and Conditions Section of the Policy - the Section in which the Reporting Requirement is found - was meant to be read in conjunction with the applicable Liability Coverage Section. (Doc. 27-9 at 10). Thus, the Terms and Conditions portion of the Policy states : " As a condition precedent to exercising their rights under any Liability Coverage Section, an Insured must give . . . written Notice . . . ." Id. Moreover, the first page of the D & O Liability Coverage Section makes clear that the Terms and Conditions Section of the Policy is *not* irrelevant: "[S]*ubject to the Declarations, General Terms and Conditions* . . . *the Company and the Insureds agree as follows* . . . ." (Doc. 27-9 at 5) (emphasis added). Only by reading these provisions of the Policy together can the court give effect to the contract as a whole, and accord ordinary words their ordinary meaning. The two Sections of the Policy at issue are not patently inconsistent, but can be harmonized so that it is unnecessary for the court to determine whether one clause takes precedence over the other. "[I]t is axiomatic that a court should not adopt an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless. . . ." Garza v. Marine Transport Lines, Inc., 861 F.2d 27 (2d Cir 1985). See also Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 326 (3d. Cir. 2005).

Other courts addressing the type of policy under consideration have rejected the Plaintiffs' argument that a policy should be deemed a pure claims-made policy where the reporting requirement does not appear on the policy's Declaration page or in its Insuring Agreements. In Janjer Enter.,Inc. v. Executive Risk Indem, Inc., 97 Fed. Appx. 410, 415 (4th Cir. 2004), the Court of Appeals for the Fourth Circuit wrote:

> While placing a reporting requirement in a policy's declarations page or insuring agreement is one manner in which parties can create a "claims made and reporting" policy, it is not the exclusive manner. Parties may also create a "claims made and reported" policy, as was done here, by expressly providing in a policy's declaration page or insuring agreement that coverage is subject to certain terms and conditions and setting forth those terms and conditions, including a reporting requirement as a strict condition precedent to coverage, in another part of the Policy.

"[T]he fact that the Policy is not titled a 'claims made and reported' policy does not negate the reporting requirement contained in the notice provision." Wendy's Int'l, Inc. v. Illinois Union Ins. Co., No. 2:05-cv-803, 2007 WL 710242 at *9 (S.D. Oh. 2007). At least one Pennsylvania court has expressed a similar view of a Federal policy similar to the one here: "It is clear that coverage under [the policy is] contingent upon . . . *notice of a loss*." JEP Mgmt, Inc. v. Fed.l Ins. Co., 2004 No. 4170, 2006 WL 2372961 (Pa. Commw. Ct. August 8, 2006) (emphasis added).

### d. **Strict Construction of Notice Provisions in a Claims-Made-and-Reported Policy**

Generally, under a claims-based policy, notice requirements are absolute. Prime Ins. Syndicate v. Ass'n of Prop. Owners of Hideout, Inc., No. 3-05CV1692, 2006 WL 3759735 (M.D. Pa., December 19, 2006). The court nonetheless recognizes that Pennsylvania courts have not explicitly addressed the consequence of an insured's failure to comply with the source of

13

notice or means of notification specified in a claims-made or claims-made-and-reported policy. [3] In predicting that the Pennsylvania Supreme Court would adopt the general rule, the court looks to ample authority from other jurisdictions supporting the proposition that there must be strict compliance with each of the notice requirements in a claims-made policy in order to invoke coverage.

The Court of Appeals for the Third Circuit addressed this issue in the context of New Jersey law, writing: "[R]equiring a formal notice of claim that the insurer can easily recognize as such comports with the distinction between claims-made and occurrence insurance policies." American Cas. Co. of Reading, Pennsylvania, 17 F.3d at 68, citing FDIC v. Barham, 995 F.2d at 604 n.9, the Court of Appeals for the Third Circuit "concur[red] that . . . notice must be given through formal claims channels because . . . the information needed, or at least the perspective utilized in reviewing it, varies when predicting the probability of future losses and recognizing the need to investigate a claim that may be based on past occurrences." Id. at 69 (citing also FDIC v. St. Paul Fire & Marine Ins. Co., 993 F.2d 155, 160 (8th Cir. 1993); and FDIC v. Continental Cas. Co., 796 F. Supp. 1344, 1353 (D. Or. 1991)). The District Court reached a similar conclusion in Federal Insur. Co. v. CompUSA, 239 F. Supp. 2d 612, 616 (N.D. Tex. 2002):

> The policy unambiguously limits Federal's liability
> to losses for wrongful acts reported to Federal in
> accordance with [the reporting provision of the
> policy]. Specifically, the directors themselves
> had to provide written notice of any wrongful acts
> giving rise to an actual or potential claim, and

---

[3]In the context of an occurrence-based policy, the Superior Court of Pennsylvania has found that indirect notice is sufficient to alert an insurer of its duty to defend. This issue has been litigated and well documented in several other jurisdictions, with the general consensus being that "*in occurrence based policies*, notice of the accident need not come directly from the insured . . . ." Philadelphia Elec. Co., v. Aetna Cas. & Sur. Co., 484 A.2d 768 (Pa. Super. 1984) (collecting cases) (emphasis added).

such notice had to be mailed to Federal's New
Jersey office.

The Court found that notice provisions "must be enforced as written." Id. at 616. "[T]he parties to an insurance contract may make it in any legal form they desire and . . . insurers may limit their liability and impose whatever conditions they please upon their obligations" so long as they are not inconsistent with public policy. Id. This position was adopted by the Court of Appeals for the Seventh Circuit in Sybron Transition Corp. v. Sec. Ins. Co. of Hartford, 107 F.3d 1250 (7th Cir. 1997), and for the Second Circuit in Am. Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76, 78 (2d Cir.1993).

The rule requiring strict compliance with the notice provisions of a claims-made policy is firmly rooted in the nature of the policy. The risk to an insurer writing a claims-made policy is narrowly circumscribed. Coverage is triggered by notice from the insured and ends at a point at which the insurer knows that it will have no further liability under the policy[4]. This benefits the insurer who is able more precisely to calculate risk, and the insured, who pays a significantly lower premium than is available under an occurrence-based policy. Because notice is at the crux of these policies, focus on and adherence to the contractual components of notice are uniquely

---

[4]The Plaintiffs contend that the Policy's notice provision is similar to those found in occurrence policies in that it directs that the insured give notice of a claim "as soon as practicable." They argue, without citing authority, that because of this similarity, the same rules should be applied here are applied with respect to an occurrence-based policy. "Notice from a third party rather than the insured should suffice." (Doc. 35 at 3). What case law exists is, however, to the contrary. In East Texas Med. Ctr. Reg'l Healthcare System, 2007 WL 2048660 at * 8, the District Court for the Eastern District of Texas wrote:
> Though the . . . policy does not demand notice of a claim . . . during the policy period, the window available for furnishing notice is not infinite and is governed by the judicial interpretation of "as soon as practicable. . . . [T]his enables [the insurer] to know within a short period of time after the policy period has expired.

Id. at *8. There, as here, the plain language of the policy established that "the coverage was written on a "claims made" basis, and this basic feature of the policy is not disturbed simply because the policy allows for a lengthened reporting time." Id.

important. The reporting requirement "imposes a duty on *the insured* to give some kind of formal, written notification of occurrences in order to evoke coverage." Am. Cas. Co. of Reading, Pa, 819 F. Supp. at 398 (emphasis added). Insistence on notice from the insured makes sense for other practical reasons as well. As Federal points out, a third party has no way of knowing whether the insured will invoke coverage for a particular claim. An insured may choose not to report a claim because of concern over elevated premiums. He may choose to represent himself, or he may have alternate coverage[5]. The Policy was written for his benefit, and it is up to him to decide whether to invoke its coverage.

The insured in this case was utterly silent, never providing Federal with notice of a claim, or indicating that he expected or wanted coverage. The Plaintiffs do not argue - and the court does not find - any basis for concluding that the equities of this matter compel a different result. "Failure to comply with the reporting provision of a 'claims made' policy precludes coverage. Although [this may be] a harsh consequence, 'claims made' policies and their reporting provisions are enforceable." Pizzini, 210 F. Supp. 2d at 258.

## 2. Was a Claim Made While the Policy was in Effect?

As the Court explained in detail above, this Policy requires that two conditions be met before an insured will be covered. There must be a claim made during the policy period, *and* the

---

[5]Many types of occurrence-based insurance, such as vehicle insurance, are mandatory - their primary purpose being to compensate those injured by a financially irresponsible driver. This type of insurance is different from the type of liability policy at issue here. "The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy." A.G. Allebach, Inc. v. Hurley, 540 A.2d 289, 296 (Pa. Super. 1988) (quoting Ferguson v. EDP. Mut. Casualty Co., 174 S.E.2d 768, 771 (S.C. 1970)). In mandatory types of insurance, public policy considerations could lead a court to find third-party notice sufficient. Here, as Federal notes, Dowdell was not required to carry D & O coverage, and no right under the policy accrued to the Plaintiffs at the time of Dowdell's alleged wrongful conduct. The Plaintiffs have failed to identify any public policy argument that favors relaxing the notice requirements in this case.

insurer must have received timely comprehensive written notice of that claim from the insured. If either of these conditions is not satisfied, Federal may decline coverage. Because it is clear that the second requisite, conforming notice, was never supplied to Federal the court does not consider whether the November 7th letter from Plaintiffs' counsel, considered alone or in conjunction with the allegedly untimely November 10th letter, constituted a claim.

### III. CONCLUSION

For the reasons set out above, it is recommended that the Motion for Summary Judgment filed by Federal (Doc. 25) be granted. Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objection shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 3 December, 2007

cc: Hon. Joy Flowers Conti
United States District Judge

All counsel of record by Notice of Electronic Filing